Council are ready. Let's call 22-9554 Arostegui v. Garland. And we do have a little bit of an extra time here. Council's worked out how you want to do the timing. Yes, Your Honor. Let me know if you need a prompt at all. Thank you. Go ahead and identify yourself and you may proceed. Good morning and may it please the Court. Laura Lunn on behalf of Petitioner Dennis Arostegui-Maldonado. I will be splitting my time with Mr. Balakrishnan. Uniformed, deputized, corrupt Costa Rican police officers used their authority and government resources to torture Mr. Maldonado. They initially solicited him to sell drugs on their behalf. When he fled instead of complying, they found him and under the pretext of a lawful arrest, they placed him at gunpoint, handcuffed him, placed him in their marked patrol vehicle, and took him to an isolated location. There they stripped him naked, beat him, raped him with a stick, and threatened to murder him. Next, they took him to a government jail where they beat and detained him. The police officers used their positions to gain information revealing that Mr. Maldonado filed police reports against them. They surveilled him and ultimately they issued a warrant for his arrest. The immigration judge found Mr. Maldonado credible. He adopted Mr. Maldonado's testimony into the court's factual findings, but he denied relief. There is no dispute between the parties that torture occurred here or that it was at the hands of police officers. Is there a dispute as to whether there was physical abuse at the jail? There is a factual dispute as to whether or not there was physical abuse at the jail, but it does not matter because Mr. Maldonado establishes color of law regardless of that fact. However, the record is clear that he did testify to being punched in the stomach until he wanted to blow or vomit while he was in the jail. What do we do in a case like this where there's an allegation of a rogue government agent, a rogue police officer? If they're acting outside their lawful authority, they could be in uniform, but freelancing on a drug deal or something, does that, because they're government operatives or they're in uniform, does that really tilt the evaluation in favor of the asylum request? Well, it does not matter because in 2002, the board issued matter of YL, and that case, it's a little bit unclear. They do talk about rogue officials, but in 2020, Attorney General Barr issued matter of OFAS, which clarified there is no rogue official exception. And in fact, Attorney General Barr explicitly stated that nothing in matter of YL should indicate that there is a rogue official exception. Well, I'm just thinking if there's a gang cell within a, let's use police because that's relevant here, but it could be any type of government agency that might have some power over the asylum seeker. Can't the IJ or the BIA consider those facts that it's an unauthorized, basically criminal enterprise within a government agency and make a distinction there in evaluating whether the asylum seeker reasonably fears for his safety? Yes, the agency can consider those facts, but must do so in the aggregate because it is a fact-intensive inquiry as stated in matter of OFAS. And there are four factors that must be whether or not the act involves a government official. Second, whether they misused their power. Third, possessed by virtue of law. And fourth, made possible only because they were clothed with the authority of law. Here, the immigration judge laid out that test, but did not apply it. Well, how, I think the specific language is made possible only because the actor was clothed with the authority of law, correct? That is correct. And why don't you walk us through how that language fits with the facts here? Thank you. Here, the corrupt officers misused their power and authority. They possessed by virtue of law, by utilizing government resources to arrest, detain, threaten, and torture Mr. Maldonado. And during each encounter, they were They gained control over Mr. Maldonado by arresting him, handcuffing him, and placing him in their official patrol car. The officers jailed Mr. Maldonado, which is not something that anybody can do. Only officers have that type of authority. They obtained restricted information about his attempts to file police reports against them. Again, a private citizen would not have access to that information. And they used their positions as police officers to issue a warrant for his arrest. Again, I'm a private citizen. I could not do that. So here, based on the facts before us in this inquiry, the torture the government officials inflicted on Mr. Maldonado was made possible only because they were clothed with the authority of law. Second, turning to the acquiescence analysis, the immigration judge compounded his legal errors by requiring both that a public official commit torture as well as acquiesce to that torture in violation of the plain language of 8 CFR 1208.18 1. The regulation requires an individual to demonstrate that either government officials acting in an official capacity committed the torture or the government officials acquiesced to the torture. It's one or the other, not both, and either is sufficient here under the facts presented to demonstrate that there was acquiescence by the government. But at a minimum, the immigration judge erred by aggregating a disjunctive legal test. Does the applicant have to show that there's a likelihood of torture if he's removed, in this case, back to Costa Rica? Yes. The regulation requires that an individual show that it's more likely than not that they suffered torture. And how did the IJ err on that prong? The immigration judge did find that he experienced torture. However, there was no explicit finding about a future fear in this case. However, according to the regulation, past torture is the first prong of what a court may consider when assessing the likelihood of future torture. So based on this, Mr. Maldonado demonstrates not only that he was, in fact, tortured, but there is a high likelihood of future torture given he was tortured by government officials. And should he be deported, they would be on notice of the fact that he was returning to Costa Rica, analogous to Ramirez-Pero, issued by the 8th So what you're saying is the IJ didn't reach that question? Yes, Your Honor. I wish to cede the rest of my time to co-counsel. Thank you. Thank you. Good morning, Your Honors. Good morning. Anand Balakrishnan for Amicus American Civil Liberties Union. First, thank you for allowing me to appear to present on the jurisdictional question. I want to start by identifying the places where it appears there is no dispute between ourselves and the government before identifying where there is, in fact, a point of dispute. Could you put the mic just a little bit closer? Yeah, of course. I'll stand closer to the mic. There you go. Is this better? Thanks. So first, the government agrees that a decision to reinstate a prior order of removal is itself an order of removal that is appealable to this court or the courts of appeal. Second, the government has not cited or pointed to any evidence, let alone any express statement in the statute that shows that Congress intended to eliminate judicial review over the very important questions regarding eligibility for CAT or withholding of removal, where those claims are made by somebody who is placed in reinstatement proceedings. The nature of the dispute over jurisdiction here is when that appeal must be filed, not whether there should be judicial review at all. The government's position is that the petition for review must be filed within 30 days of the decision to reinstate a prior order of removal. However, this court has already held in Luna Garcia that that order of removal, the decision to reinstate, is not final until completion of the reasonable fear process and then the withholding only process. How can we reconcile Luna, though, with the Supreme Court's decision in Johnson that does, I think, pretty categorically state that the 30-day appeal from the final order of removal is a jurisdictional requirement? In Johnson, doesn't it? And while you're answering that, I mean, I guess the key case hanging out there is the Second Circuit's recent case. So if you could kind of cover that ground for me. Of course, Your Honor. So I'll start with there, you know, that was not a decision about judicial review at all. And in fact, in footnote six, the Supreme Court expressly reserved the question that's presented here, which is when a reinstatement decision becomes final for purposes of judicial review. That case was about when, was a detention case. Specifically, the question was when, was whether a person who was in reinstatement proceedings, who had already been ordered removed, who had entered without authorization and thus had a prior order of removal that could not be further challenged, whether that person was detained under the post-order detention statute and thus was not entitled to a bond hearing. It was an entirely separate statutory structure and also an entirely different set of underlying principles. Isn't the underlying principle the same regardless of the procedural posture? No, Your Honor. Because in the detention context, as the Supreme Court pointed out in Johnson, there were reasons that Congress would have wanted to deny a bond hearing to somebody who had re-entered the country without authorization. Because otherwise, because they had previously already been subject to the post-order detention statute, by virtue of their prior order of removal, they were not eligible for certain forms of relief outside of forms of protection such as CAT or withholding. And thus, Congress did not want to afford them more rights in detention upon their return to the United States than they had in the first place. And second, could have considered that more of a flight risk because of the existence of the prior order. None of those considerations are present here. In fact, it's the opposite. Because Congress has nowhere stated that judicial review should not be available over these types of claims. And in fact, it wasn't the focus on what was a final order removal. And that really is what triggers the clock ticking for 30 days. And it's either the first order removal or, you know, like our circuit and the others have held, it's the reinstatement order is also the functional equivalent of a final order of removal. Why doesn't, at least for purposes of this case, why didn't that start, take the time to start ticking for the applicant and that the appeal window is 30 days after that? Right. I think that to go back to... Luna doesn't say that, but I just want to make sure that I understand how Johnson and Luna dovetail. I understand. So I think just to start with Johnson, to return to Johnson very briefly. So in Johnson, it was considering the finality of the reinstated order of removal. So which is reinstated as of its original date. And that was what the court focused on as the relevant order that was administratively final. It did not consider this separate question about the question of judicial review over it. The simple existence of the prior order of removal was sufficient in that case to move, in Johnson, to move them from pre-order detention to post-order detention. Here, it's a different situation, which the Supreme Court did not have occasions to address. Because here, once, as it's acknowledged, the reinstatement decision creates a new order of the Supreme Court. In fact, it never discussed the specific statutory provision 1101-847B that addresses the finality of orders of removal, nor did it have any reason to. And that's the question that this court addressed in Luna Garcia. And because it's discussing two different orders and only Luna Garcia discusses the finality provision, I think that they're not in tension with one another. What do you think, then, the fatal flaw in the Second Circuit's cases? What distinguishes it from the argument that you're presenting for us? There's a couple of issues with the Second Circuit's opinion. So first, the Second Circuit does not, as this court did in Luna Garcia, identify the proper order of removal in a clear fashion, which is the decision to reinstate a prior order of removal. Second, the Second Circuit disregards the ambiguity of the finality definition in 1101-847. It says that the order is final, which that provision says that the order is final after administrative appellate proceedings. But as this court has recognized, that doesn't map on clearly to the posture of a reinstatement decision because you don't have opportunity to appeal that to the BIA or otherwise. And I think that that second point is key to the problems with Bhakta Bhai Patel, because that provision is ambiguous as applied to this order. And in the absence of clarity in the statutory definition, as this court did in Luna Garcia, and I think is absolutely correct, you have to resort to other interpretive tools. And that is, of course, the strong presumption of judicial review, as well as the general structure of the immigration appellate proceedings, which has a single petition for review at the end of all proceedings. If there's an ambiguity, should we defer to the agency interpretation? No, Your Honor, for a couple of reasons. First, the agency's interpretation hasn't been made in a formal manner outside of litigation documents. But even beyond that, the interpretive principles that we're pointing to are, you know, they're not within the agency's own expertise. These are questions for the court's expertise about defining Congress's intent against the backdrop of certain presumptions in favor of judicial review, that there's no need for deference to the agency when interpreting the statute here, particularly when it addresses the question of this court's own jurisdiction as opposed to the structure or form of agency proceedings. I want to pause for questions, but if there are none, I'm going to reserve the rest of the time for a moment. Thank you. Thank you for your participation. Let's hear from the government. Thank you, Your Honors, and may it please the court. Holly Smith on behalf of the Attorney General. The court should dismiss this petition for review because it was not timely filed with regard to the final order of removal in this case, which is, as petitioner concedes, the reinstatement order. When DHS issued that order, it was final for all administrative purposes. There was no further review outside of the Department of Homeland Security. That order was final. All that the INA requires is a final order of removal. Then the petition for review must be filed within 30 days after that order. That flows from the Supreme Court reasoning in its recent cases. Yes, it is true that the Supreme Court did not directly address the jurisdictional issue here, the filing of the petition for review. We have Luna too, don't we? Isn't that a roadblock for your position? No, Your Honor, we don't think so. With regard to Luna, the two cases that the did resort to other methods to look at, but what the Supreme Court, what Luna did, was to look for finality after the CAT proceedings. And what the Supreme Court has clearly said is that is not a final order of removal. It doesn't determine whether the individual was removable. And what went into the Luna consideration, it appears, Your Honor, is that you were looking for all of the proceedings to be wrapped up because everything needed to be completed. Not bad luck time, Your Honor, but it can no longer stand given the Supreme Court's clear statement that we have one order of removal. It's the determination whether the individual is removable that the CAT proceedings, regardless of what happens in them, do not change that. All that affects is to where an individual may be removed, not whether he can be removed. Do we need to review Luna then en banc? No, Your Honor, because of the intervening Supreme Court precedent, this Court could take. They've clearly spoken, specifically in Johnson, that the reinstatement order is final when issued. There are no more administrative proceedings on that determination of whether the individual is removable. So given the clear Supreme Court statements, this panel could do that. The government thinks this panel could do that. Well, I'm looking at one statement from the Johnson case where the court said, we express no view on whether the lower courts are correct in their interpretation of Section 1252. Yes, Your Honor, because the government acknowledges that that specific issue was not before the court, but using the language that the court did use, specifically rejecting any implication by anybody that finality is determined by later proceedings. Well, I understand that, but if the court is saying that they're leaving the 1252 issue open, how does that put us in a position to go against our decision in Luna Garcia? Because of what was considered in Luna Garcia, you were looking for one final order of removal. And what the Supreme Court has said in Nasrallah is that the final order of removal is the reinstatement order. And if the final order of removal, the determination of removability, which occurs at the time of reinstatement, drives the filing of the petition, that's clearly stated in Nasrallah, Your Honor. Well, I'm curious about one thing. It seemed like the government took the opposite position in Luna Garcia itself and in the Second Circuit, and then here you are. Yes, Your Honor, the government does acknowledge that previously and historically it had taken the position, which was adopted by many courts, and we too were looking for a way to sort of put everything together and make it make sense for everybody. We now acknowledge that the Supreme Court has told us we were incorrect. The order of removal occurs at the time that removability is determined, and that's the reinstatement order. Well, it seems like the Second Circuit is driving your argument more than the Supreme Court is. Your Honor, a lot of things go into the consideration, and I acknowledge that historically we did make the other arguments, and now we've seen what the Supreme Court has done. We had the benefit of the analysis from the Second Circuit, but the analysis isn't necessarily all being driven by the Second Circuit. We do think that their analysis of Nasrallah and Guzman-Chavez, where they took the cases on, they went through a very detailed analysis of how those cases work within this regime, and we do think that that is the right analysis. Doesn't the implication of your argument mean that our cases that construe a reinstatement order as a final order removal? Isn't the logic of your position that that's not a correct interpretation of the statute? No, Your Honor. The government's position is that the reinstatement order by DHS is a final order. If you look at the language even that's on the actual notice of intent on that reinstatement, that notice of decision to reinstate, it does say in the middle of there, it has been determined you are removable, and it refers to the prior order, and it has some facts listed above, but it does serve as the order of removal. So there can be multiple final orders of removal in a proceeding? Well, Your Honor, in this particular circumstance what we have is the reinstatement is based on the prior order. It's reinstated from the date of its issuance and can be executed any time. But that seems textually inconsistent, that the reinstatement would be the final order removal when all the reinstatement order does is circle back to the previous BIA determination. Under the definition requiring a finding of, I'm using removability in place of deportability because that's how the language has been changed, but the order does clearly on its face say it has been determined you are removable. So that does fit within the definition, Your Honor. So under your view of things, how does the petitioner here get review of the Convention Against Torture issues? How does that play out under the way you think things should work? Unfortunately, Your Honor, the government thinks that this petition should be dismissed because it was untimely filed. We have acknowledged, however, that there could be, although, petitioner seems to disavow this reliance interest in stating that he couldn't possibly have known when to file. But recognizing the existence of Luna Garcia, this court's binding case law on the issue at the time, we have acknowledged that the court should find the jurisdictional issue that we're putting forward, decide that the timely filing must occur from the merits given the potential for this reliance interest. Well, this is your, I was going to ask you about that. This is footnote two of your motion to dismiss and you repeated in the brief that we, you're suggesting we agree with you on the jurisdiction issue prospectively. But is that really something that can be done? Either we have jurisdiction or we don't. Yes, we acknowledge that, Your Honor. And so if the court disagrees with the position that it could only, it would only be applied prospectively to future litigants coming forward, then the government thinks that the court should dismiss the petition for review. Well, I'm just, I'm just looking for something to grab onto in terms of your suggestion. Is there, can you point to an example where a court has done that? So far, Your Honor, I apologize. It's the argument that the government is putting forward. We've made it in the Ninth Circuit. We don't have a resolution on what they're going to do yet. Well, I'm talking about any case where a court's faced with the question of its own jurisdiction and has said, well, maybe we don't have it, but we're going to exercise it now and in the future we won't. I just can't think of an example where that's ever happened. No, Your Honor. Unfortunately, from this court, I acknowledge we do not have that example. Or any court. The government was just trying to, given the change in the position in the new Supreme Court law and the potential for having the reliance on Luna Garcia, give the benefit, give the benefits as much as possible to petitioner in this case. But the government is not asking for an exercise of hypothetical jurisdiction, which this court does not do. And so if the court finds that the government's position is correct on jurisdiction, then the petition should be denied. Okay. Can we waive the jurisdictional defect? No, Your Honor. The government would ask that the court not to do that. That would be in a way of exercising hypothetical jurisdiction, which the government, when in particular one of your sister circuits has done that, the government has objected to that. The government thinks that the jurisdictional issue should be decided. Well, that's not the same thing as saying we can't, we, it isn't waivable. Yeah, you're saying we, you want us to decide the issue. I understand that. Yes. But is there, I'm just struggling, I'm sorry, the panel's struggling with trying to figure out your suggestion that we could actually decide the merits here, despite the jurisdictional question. And so far you haven't come up with any theory or don't like the hypothetical jurisdiction. You don't like, assuming we have jurisdiction, we find this right. You don't want us to do those things. Correct, Your Honor. Okay. So are we left with nothing? Were you citing it, for example, in the Ninth Circuit? You're saying you're making this argument in the Ninth Circuit. What do you say? Yes, Your Honor. They had a case at the salon where they did something similar. It's a rather convoluted history in that case, and it dealt with some remands for specific issues. But when the final jurisdictional rule was reached, the court in that case decided that it would be applied prospectively because of past reliance interest. And so that's what we're citing in the Ninth Circuit. But we are specifically asking them, although they have done it in other cases, not to just assume or say they have hypothetical or statutory jurisdiction. We're using the reliance interest from that case. And we acknowledge that here, there's probably not an example where the court has done the same thing. So if the court finds that it can't do that or struggles with finding a way to honor this reliance interest, then yes, the government would say the petition should be dismissed because it was untimely filed. Well, you're saying, too, that there are no reliance interest in this case? What I said, Your Honor, was that the government acknowledges there may have been, but then in some of Petitioner's subsequent briefing where he points out that, you know, he couldn't have possibly known when to file under the government's new position, it appears he's stepping away from any potential for reliance interest on Luna Garcia. And so if he doesn't, didn't have any reliance interest on that case, then the government would say they're not in play and the petition should be dismissed. And then, so just along these lines, what is the basis, what would be the basis for us to move to the merits? I know I'm repeating myself, but is this a sort of equitable, what is the reliance interest grounded in? If the reliance would be the filing of the petition based on Luna Garcia, once all of the withholding for the CAP proceedings, which are not a final order of removal. If the holding in Luna that all of the proceedings had to be completed, regardless of whether they affect the, whether the person can be removed. If there was reliance on that case for the filing of the petition in this case, the government thinks that the court, to honor those potential interests, could look at the merits and deny the petition. Thank you. Well, could, could I just, are there more questions on jurisdiction? Because I'm ready to ask a merits question. So on the undercolor of law issue, is it your position that if private citizens could have performed the acts against the petitioner here, then the police did not act under color of law? Yes, your honor, the requirement for color of law is that they only have access to the individual or performed those, the acts that they performed because they had the sort of government position. And that's, as we've pointed out from the facts and as the immigration judge, when he was going through the facts, acknowledged the actions that were done here. Yes, they were done by men in police uniforms, although it was unclear whether they were on is a fact that figures in to the weighing analysis here. But because they could have had access to this individual, as he acknowledges, they knew that he worked in a call center and thought he would have access to people to sell drugs for them. And so because of that issue, they did not have access to him solely based on their position as police officers. Anyone could have done that. Could a private citizen have used a patrol car, put the petitioner in jail, and obtained an arrest warrant? What the immigration judge looked at here, your honor, is that he says that he was approached at gunpoint and any criminal. That's not the question. The question is whether a private citizen could have used a patrol car, put him in jail, and obtained an arrest warrant. Can a private citizen do all those things? You are correct, your honor, that a private citizen could not do those things. However, that, those facts alone do not compel the conclusion that we have under a color of law here because we have countervailing facts. We have the fact that anyone could hold him at gunpoint. Although he says he testified that he was harmed in jail, when he was specifically asked, were you harmed in jail, he specifically testified no. And the reason that fact is important is... Could you just say that again? When he was specifically asked by the immigration judge, were you harmed when you were in jail, he specifically said no. Actually, what he was asked directly was, did all the harm occur prior to you being taken to jail? And he specifically said yes. And you'll find that at the record from the Executive Office for Immigration Review at 367 and 375, your honor. Well, I thought there was also an exchange where he said he was pushed in the stomach at the jail. What about that testimony, which was, by the way, found credible? Credibility, it does not mean persuasive or a carriage of burden of proof, your honor. Those are two different... Yes, we acknowledge he was found credible, but that... Well, apart from being found credible, didn't he say that? That that happened to him at the jail? It's not clear that that actually flows, your honor. But what is clear is that when he was specifically asked whether all the harm occurred prior to him being taken to jail, that's the specific question from the immigration judge, he specifically answered yes. And so to the extent we have competing facts or an ambiguity in the record... All right, but a private citizen couldn't have taken him to jail. That's correct, your honor. Couldn't get an arrest warrant. That's correct, your honor. Or use a patrol car. That's correct, your honor, unless they stole it, your honor. But that's correct. Isn't this a rather cramped application of matter of OFAS? No, your honor. The government would disagree with that categorization, that classification. Well, that opinion itself on this private citizen question said, and I'm quoting, that if the test is whether a private citizen could have performed torture, and that's it, this would appear to disqualify much of what the under color of law rule might otherwise qualify as torture. But the rest of that decision, your honor, points out that these are very fact-specific inquiries undertaken by the immigration judge, who is the trier of fact. And so when we have competing facts or we're weighing the facts, the standard of review that the petitioner must establish that his position is compelled, that could be the only conclusion that's reached, that's how the standard of review works. His position, as understandable as it may be. Well, other than whether he was beaten in jail, I thought the parties are in agreement on what happened here. Oh, no, your honor, that isn't. Well, that's what your opposing counsel says. What are the factual disputes other than this? Well, for instance, your honor, when you're looking for color of law, the immigration judge pointed out that there were things a private citizen could do. The holding at gunpoint. No, I'm asking for the factual disputes. You're saying there are factual disputes. What are they? About what happened? The interpretation of the evidence, your honor, as the immigration judge pointed out. Did the police have access to the petitioner solely because of their position as police officers? That is the dispute. The government's position as laid out by the immigration judge is that no, they did not have access to him only because there were certain things. But that isn't, access alone is not the test. It is one of the factors. It's not, it's a factor, but it's not the test. You keep using the word access, access, access. Well, that's one thing, but they did a lot more than just access this petitioner. But they were able to do what they did and they knew they would be punished, your honor, at one point. I'd like to finish this response. One of the things that the immigration judge looked at, your honor, is that in the police officers telling petitioner, don't report us, they were acknowledging. He interpreted that when he's weighing and interpreting the evidence as the reasonable facts finder in this case, he looked at that to say they knew that because of the country conditions and how law enforcement is dealt with in that country, that that would bring them to bear that actions would be taken against them. And so that they knew they shouldn't be doing this. It is the immigration judge that weighs the facts that are before him as the reasonable facts finder. This is the fact to the extent that there are factual disputes or differences in the way that the evidence could be viewed under the standard of review, that the evidence must compel under the conclusion petitioner puts forward, that is not met here given the differences in the way the evidence is weighed, your honor. If there's nothing further, the government would ask that the petition is dismissed or alternatively denied. Thank you for your time. You're welcome. And I'll give two minutes rebuttal to each counsel. Your honors. One second. First, I'll keep track of it for you. Thank you. First, the standard of review here is de novo because we're applying a legal test to facts. And so this court can review the issue de novo. I submitted a 28-J letter providing some case sites in support of that position. The government asks this court to diverge from binding precedent from the Board of Immigration Appeals, matter of OFAS. There's a four-prong test and none of those prongs involve access. None of those prongs involve the location of torture. So it would be inappropriate to use those facts as dispositive elements when they do not appear in the legal test. If we are applying them based on the fact that you look at the facts in the aggregate, none of them should be weighed more heavily than others. Here, we have government control over the person through their access as police officers, where they were able to handcuff him at gunpoint while wearing their uniforms. If somebody on the street saw them, they would see it looked like a lawful arrest. They took him to a jail, which no private citizen would have access to. So here, we see that Mr. Maldonado demonstrates he was tortured under the color of law in each element of the four-prong test. Moreover, he qualifies for protection at... Go ahead and finish your response. Thank you. He qualifies for protection because the government officials both conducted the torture and acquiesced to the torture here in this case. We seek for the courts to grant Mr. Maldonado's CAC claim and remand for the Salvadoran claim. Thank you. Your Honor, I wanted to make a couple of quick points, but also if you have any further questions for me, happy to answer them. First, I just want to stress that eliminating judicial review over either the cap and withholding process for those who are in reinstatement or over the reinstatement decision itself would be a massive sea change in the law. Not once over the past 20 years, since 1996 or even before that, have courts not reviewed these claims. It's a momentous decision, and I think that counsels in favor of sticking with this court's prior decision in Luna Garcia, which is clearly not directly at odds with either of the subsequent Supreme Court cases. And I do believe that if the court were to change positions now, it would severely not only disrupt judicial review in this case, but also create administrative problems going forward. We pointed to these in our brief, which is that under the government's view, everyone who is placed in reinstatement will have to file a petition for review, regardless of what the outcome is. That's a massive burden for this court. It's a massive burden for the lawyers who represent, oftentimes pro bono, these non-citizens, and it's very difficult for non-citizens themselves who are detained. The rule that the government is offering is just simply not administrable, and I think that this court has already acknowledged and understood the ambiguity in the statutory provisions of Luna Garcia and should continue along that path. Even worse, I think, is the Second Circuit's rule, which threatens to eliminate judicial review entirely, and do so in the absence of any language in this statute showing that Congress intended to remove these decisions from the purview of the court's review. Congress knows how to eliminate jurisdiction over immigration decisions and has done so in 1252 at several points, and has said with language, no court shall have jurisdiction to review the following types of decisions. There is no analogous language applying to reinstatement, let alone withholding or CAC claims. Do you know if the Second Circuit case sought an en banc review or a petition to the Supreme Court? What's the procedural status of that case? So that case, a petition, we filed a which was denied. I do not know whether subsequent cases have sought an en banc. I'm also not aware of any cert petitions at this point from the Second Circuit, certainly not in that case, but or even any subsequent ones. All right, counsel, thank you. We appreciate your participation and help. Thank you. Counsel, you're excused on the case of subpoena.